UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHORNOR BROWN, | ) NO.  CV-06-0196-MWL |
| | ) |
| Plaintiff, | ) ORDER GRANTING DEFENDANTS' |
| | ) MOTION FOR SUMMARY JUDGMENT |
| -vs- | ) |
| | ) |
| CHANA WHITE, PEGGY PALOMAREZ, | ) |
| and KATHLEEN DOWDY, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Before the Court is Defendants' motion for summary judgment (Ct. Rec. 38) which came on for hearing, without oral argument, on April 26, 2007.

I.    Procedural History

Plaintiff Chornor Brown ("Plaintiff") was formerly incarcerated at Ahtanum View Correctional Complex ("AVCC"), but was transferred to Airway Heights Corrections Center ("AHCC") on September 22, 2005. (Ct. Rec. 39).  Plaintiff is represented by attorney Jeffry K. Finer and is proceeding in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

ORDER - 1

Plaintiff claims Defendants violated his constitutional rights under the Eighth Amendment by denying him medical treatment.  (Ct. Rec. 9, p. 3).  Plaintiff additionally alleges his Fourteenth Amendment right to equal protection was violated because his race was a factor in the denial of medical treatment.  (Ct. Rec. 9, p. 3). Finally, Plaintiff alleges that his due process rights and his rights protected by the Washington State constitution were violated.  (Ct. Rec. 9, p. 3).

On October 24, 2006, the parties consented to proceed before a magistrate judge.  (Ct. Rec. 17).  On March 5, 2007, Defendants filed a timely motion for summary judgment.  (Ct. Rec. 38).  Plaintiff filed a memorandum in opposition to Defendants' motion for summary judgment, as well as a statement of disputed facts, on April 16, 2007.  (Ct. Rec. 47, 50).  Defendants filed a reply to Plaintiff's opposition on April 23, 2007.  (Ct. Rec. 52).

II.  <u>Legal Standard</u>

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

ORDER - 2

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id*. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id*. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.

ORDER - 3

11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *T.W. Elec. Serv.*, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citing *United States v. Diebold*,

ORDER - 4

*Inc.*, 369 U.S. 654, 655 (1962) (per curiam).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).

III.  <u>Discussion</u>

    A.    <u>Eighth Amendment Claim</u>

Plaintiff's complaint alleges that he injured the fifth finger (pinky finger) on his right hand while playing basketball at AVCC in January of 2005.  (Ct. Rec. 9, p. 5).  Plaintiff alleges that, after weeks of complaining, he was taken for x-rays on February 23, 2005.  (Ct. Rec. 9, p. 5).  Plaintiff asserts that the x-rays revealed pain and swelling and a subchondral cyst in the head of the proximal phalanx of Plaintiff's finger.  (Ct. Rec. 9, p. 5).  Plaintiff asserts that he continued to request medical treatment from medical staff at AVCC but such treatment did not occur until July 19, 2005.  (Ct. Rec. 9, p. 6).  Plaintiff indicates that he was examined by John J. Hwang, M.D., on July 19, 2005 at Orthopedics Northwest in Yakima, Washington.

(Ct. Rec. 9, p. 6). Plaintiff indicates that Dr. Hwang diagnosed swelling at the PIJ, hyperextended DIJ, pain over the radial collateral ligament, pain over the central tendon, radial collateral ligament tear in the right fifth finger PIJ extension. (Ct. Rec. 9, p. 6). Dr. Hwang recommended hand therapy at the Yakima Hand Clinic, to work on controlling the swelling and to possibly regain at least passive range of motion, and for Plaintiff to be fitted with static and dynamic splinting. (Ct. Rec. 9, p. 6). Plaintiff was to return to Dr. Hwang in four weeks. (Ct. Rec. 9, p. 6). Plaintiff alleges that upon his return to AVCC he was denied all further medical treatment for his injured pinky finger. (Ct. Rec. 9, p. 7).

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The "deliberate indifference" standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm. *Farmer*, 511 U.S. at 837. A prison official does not act in a deliberately indifferent manner unless the ///

ORDER - 6

official "knows of and disregards an excessive risk to inmate health or safety." *Id.*

Deliberate indifference can be manifested by prison guards intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Estelle*, 429 U.S. at 104-05. However, where a prisoner alleges a delay in receiving medical treatment, the prisoner must allege that the delay led to further injury. *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds, WMX Techs, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997); *Shapely v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

A prison medical staff's acts or omissions will constitute deliberate indifference if staff members knew of and disregarded an excessive risk to an inmate's health. *Farmer*, 511 U.S. at 837. Prison officials are deliberately indifferent to a prisoner's serious medical needs when they "interfere with treatment once prescribed." *Estelle*, 429 U.S. at 104-05. The Ninth Circuit has found deliberate indifference where prison officials "deliberately ignore the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner." *Hamilton v. Endell*, 981 F.2d 1062, 1066 (9th Cir. 1992) (reversing summary judgment where prison officials forced prisoner to endure a plane flight that resulted in ear injury, in direct contravention of a treating physician's previous orders); *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989) (per

ORDER - 7

curium) (reversing summary judgment where medical staff knew that pretrial detainee had head injury, but prescribed contraindicated medications, disregarding evidence of complications to which they had been specifically alerted by private treating physician); *Tolbert v. Eyman*, 434 F.2d 625 (9th Cir. 1970) (finding cognizable claim for deliberate indifference where warden refused to authorize prisoner's receipt of medicine that had been previously prescribed by a physician); *Cf. McGuckin v. Smith*, 974 F.2d 1050, 1062 (9th Cir. 1992) (where surgery recommended by prisoner's prior physician was severely delayed, court was unable to hold doctors liable because prison administrators, not the doctors, were responsible for scheduling treatment).

The Courts of other federal circuits have also found deliberate indifference where prison officials ignore a previous physician's treatment plan. *White v. Napoleon*, 897 F.2d 103 (3rd Cir. 1990) (finding cognizable claim for deliberate indifference where prison officials ignored private hospital's treatment orders and refused inmate's access to prescribed medication); *Gill v. Mooney*, 824 F.2d 192 (2nd Cir. 1987) (finding cognizable claim where prison officials refused to permit plaintiff to participate in exercise program prescribed by doctor); *Eades v. Thompson*, 823 F.2d 1055 (7th Cir. 1987) (finding cognizable claim where prisoner alleged that prison officials made him travel and carry a heavy box, causing a surgical incision to gape open, in violation of prior medical orders); *Martinez v. Mancusi*,

443 F.2d 921 (2nd Cir. 1970), *cert. denied* 401 U.S. 983, *cited with approval by Estelle v. Gamble*, 429 U.S. at 105 n.10 (finding deliberate indifference where prison staff forced post-surgical prisoner-patient to walk, ignoring warnings from hospital personnel that inmate should not be moved); *see also* Carl T. Drechsler, Annotation, *Relief Under Federal Civil Rights Acts to State Prisoners Complaining of Denial of Medical Care*, 28 A.L.R. Fed. 279 (1976) (recognizing that, on the whole, courts do not condone the practice of prison officials ignoring orders rendered by a prisoner's previous physician).

The instant case is dissimilar to the above examples of Courts' finding deliberate indifference.  Here, the record demonstrates that the defendants did not purposefully ignore or fail to respond to Plaintiff's medical needs arising from his injury.  The evidence shows that Plaintiff received regular and continuous care for his medical complaints.

On February 21, 2005, it was reported that Plaintiff had injured his right pinky finger while playing basketball approximately one and one-half weeks prior to the medical visit.  (Ct. Rec. 39-3, Att. A).  He was seen at the medical department and diagnosed at that time with a jammed finger.  (Ct. Rec. 39-3, Att. A).  X-rays were ordered to rule out a fracture or tendon disruption.  (Ct. Rec. 39-3, Att. A).  X-rays were taken on February 23, 2007.  (Ct. Rec. 39-3, Att. B).  Plaintiff was thereafter examined by Roy Gondo, M.D., on March 2,

2005.  (Ct. Rec. 39-3, Att. A).  Dr. Gondo noted that the x-ray revealed no fracture or dislocation, the exam was unremarkable, and no orthopedic referral was necessary.  (Ct. Rec. 39-3, Att. A).

On May 19, 2005, Greg Bickel, PA-C, referred Plaintiff to Dr. Gondo for assessment.  (Ct. Rec. 39-3, Att. C).  On May 25, 2005, Dr. Gondo examined Plaintiff, diagnosed a deviated right fifth digit, and recommended an orthopedic referral at that time.  (Ct. Rec. 39-3, Att. C).  On June 30, 2005, Plaintiff's pertinent medical information was faxed to Orthopedics Northwest in preparation for the medical consult for Plaintiff.  (Ct. Rec. 39-3, Att. F).

On July 19, 2005, Plaintiff was seen by John J. Hwang, M.D., of Orthopedics Northwest.  (Ct. Rec. 39-3, Att. I).  Dr. Hwang's medical report notes that Plaintiff initially jammed his right pinky finger rather severely in February and that he "continues to re-injure the finger."  (Ct. Rec. 39-3, Att. I).  X-rays taken that day revealed "some subluxation at the PIJ consistent with a radial collateral ligament tear" but no obvious fracture.  (Ct. Rec. 39-3, Att. I).  Dr. Hwang recommended hand therapy to control swelling and increase range of motion, and Plaintiff was given a referral to the Yakima Hand Clinic.  (Ct. Rec. 39-3, Att. J).  Plaintiff was to return in four weeks "to discuss the possibility of a collateral ligament repair."  (Ct. Rec. 39-3, Att. I).

///

///

ORDER - 10

AVCC did not have a contract with the Yakima Hand Clinic in 2005. (Ct. Rec. 39-5, p. 3). On August 3, 2005, Plaintiff was informed that AVCC did not have orthopedic and rehabilitation services onsite and that Plaintiff would have to be transferred to AHCC for treatment as that facility offered physical therapy onsite. (Ct. Rec. 39-5, p. 2; Ct. Rec. 39-5, Att. C). On August 31, 2005, Plaintiff was again informed that if he wanted the recommended treatment, he could be moved to a facility where those services were available. (Ct. Rec. 39-5, Att. F). On September 22, 2005, Plaintiff was transferred to AHCC for medical needs. (Ct. Rec. 39-2, Att. A).

Plaintiff did not seek treatment for his pinky finger at AHCC until December 1, 2005. (Ct. Rec. 39-3, Att. R). Plaintiff received hand therapy from December 1, 2005, through June 14, 2006. (Ct. Rec. 39-3, Att. R, S, T). On June 14, 2006, Plaintiff was released from physical therapy with "full functional use of his right hand per [Plaintiff's] report." (Ct. Rec. 39-3, Att. T).

The above undisputed evidence demonstrates that Defendants provided Plaintiff was continuous care for his medical complaints related to his finger. Accordingly, there does not appear to be a deprivation of medical care as alleged.

In any event, a prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment unless the mistreatment rises to the level of deliberate indifference to "serious medical needs." *Estelle*, 429 U.S. at 106. The alleged deprivation must be,

ORDER - 11

in objective terms, "sufficiently serious." *Farmer*, 511 U.S. at 834.
If Plaintiff's medical needs were not serious, then Defendants'
conduct could not have arisen to a violation of the standard of
conduct required by the Fourteenth Amendment.

As noted by Defendants, "serious medical needs" include "diseases
such as asthma, hypertension, epilepsy, diabetes, tuberculosis and
lupus" as well as impairments such as hearing loss, abdominal pains,
fractures, kidney stones, lacerations, gunshot wounds, seizure
disorders, chronic obstructive pulmonary disease, and cardiac
problems. *Madrid v. Gomez*, 889 F.Supp. 1146, 1200-1201 (N.D. Cal.
1995); (Ct. Rec. 40, p. 7).

The facts demonstrate that Plaintiff had an injured finger that,
as revealed by a February 23, 2005 x-ray, was not fractured or
dislocated.  (Ct. Rec. 39-3, Att. A).  The facts further show that
after that initial injury, Plaintiff continued to reinjure the finger.
Plaintiff has acknowledged that his finger would jam when he put his
hand into his pocket.  (Ct. Rec. 39-4).  Plaintiff contends that he
was not provided any means to immobilize his finger and protect
against hyper-extension.  However, the medical records do not reveal
any recommendation for such action until July of 2005.  The
examination of Plaintiff following the February 2005 x-ray was
"unremarkable," and the doctor performing the examination did not
request or prescribe immobilization of Plaintiff's finger as it was
not necessary at that time.  (Ct. Rec. 39-3, Att. A).  An examination

of Plaintiff's finger in July of 2005 revealed "some subluxation at the PIJ consistent with a radial collateral ligament tear" but no obvious fracture. (Ct. Rec. 39-3, Att. I). A splint and physical therapy were recommended at that time. From the evidence submitted, it does not appear that the injury Plaintiff suffered, as alleged in his complaint, constitutes a "serious medical need" for the purposes of an Eighth Amendment medical claim. Plaintiff has failed to demonstrate that he had a "serious medical need" with respect to his injured finger or that Defendants disregarded Plaintiff's medical condition relating to his finger.

Based on the foregoing, the Court finds that there is no genuine issue for trial with regard to an Eighth Amendment claim in this case. Therefore, the Court finds that Defendants have met their burden as the parties moving for summary judgment. Accordingly, Defendants' motion is granted with respect to Plaintiff's Eighth Amendment claim against Defendants.

    B.    Equal Protection Claim

Plaintiff's complaint alleges that a white inmate at AVCC was allowed treatment at the Yakima Hand Clinic while the AVCC staff denied Plaintiff, a black inmate, access to the same clinic. (Ct. Rec. 9, p. 8).

Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. *San Antonio*

ORDER - 13

*School District v. Rodriguez*, 411 U.S. 1 (1972).  In order to state a Section 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show that defendants acted with intentional discrimination against plaintiff or against a class of inmates which included plaintiff.  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (equal protection claims may be brought by a "class of one"); *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *Federal Deposit Ins. Corp. v. Henderson*, 940 F.2d 465, 471 (9th Cir. 1991); *Lowe v. City of Monrovia*, 775 F.2d 998, 1010 (9th Cir. 1985).  "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights."  *Barren*, 152 F.3d at 1194.

Plaintiff contends that he was denied equal protection of the law because the staff at AVCC allowed a white prisoner access to a facility for treatment, while he was not allowed treatment at this same facility.  (Ct. Rec. 9, p. 8).  To prevail on this claim, Plaintiff must prove that a discriminatory purpose was a motivating factor in Defendants' decision not to allow Plaintiff access to the Yakima Hand Clinic.  *Abdullah v. Fard* , 974 F.Supp. 1112, 1119 (N.D. Ohio 1997); *Salaam v. Collins*, 830 F.Supp. 853, 859 (D. Md. 1993).

While Plaintiff essentially argues that Defendants treated inmates differently based on race, Plaintiff's complaint fails to specifically allege that Defendants' actions were done with

ORDER - 14

discriminatory intent.  Plaintiff fails to provide any evidence that his race played a role in the Defendants' actions.  Furthermore, as demonstrated by Defendants, the inmate transported from AVCC to the Yakima Hand Clinic in 2005 was transported in order to be fitted with a splint and not to receive physical therapy or other ongoing treatment.  (Ct. Rec. 39-5, Att. I).  Dissimilar to the inmate transported to the Yakima Hand Clinic, Plaintiff required ongoing physical therapy sessions.  Plaintiff received, and successfully completed, this physical therapy following his transfer to AHCC.  (Ct. Rec. 39-3, Att. R, S, T).

Because Plaintiff has not specifically alleged discriminatory intent and Plaintiff has failed to establish that he was treated differently based on race, Plaintiff's allegations do not give rise to a claim for relief under section 1983 for violation of the Equal Protection Clause.  The Court finds that there is no genuine issue for trial with regard to Plaintiff's equal protection claim, and Defendants have thus met their burden as the parties moving for summary judgment.  Therefore, Defendants' motion for summary judgment is granted with respect to Plaintiff's equal protection claim against Defendants.

C.   Due Process

Plaintiff contends that his due process rights were violated because he was threatened and discouraged from using the grievance system at AVCC.  (Ct. Rec. 9, p. 10).

ORDER - 15

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The fact that Plaintiff complains that Defendant Dowdy used a hostile voice toward him and acted unprofessionally does not mean that his constitutional rights were violated. Verbal harassment and abuse and threats of bodily harm do not state a cause of action under 42 U.S.C. § 1983. *Freeman v. Arpaio*, 125 F.3d 732, 738 (9th Cir. 1997); *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987).

With respect to Plaintiff's grievance process, he was told to rewrite his grievances before filing them so that they would comply with DOC policy, Plaintiff re-wrote and filed his grievances, and Plaintiff has no complaint about the processing of those grievances. (Ct. Rec. 39, p. 9). Plaintiff was not prevented from filing grievances, and he alleges no harm from the re-writing of his grievances. (Ct. Rec. 39, p. 9).

Pursuant to Local Rule 56.1(d), the Court may assume that the facts as claimed by the moving party exist without controversy in the event that those facts are not controverted by the nonmoving party. LR 56.1(d). Here, Plaintiff provides no opposition argument or evidence in his response to dispute Defendants' motion for summary judgment with respect to the due process claim.

Based on the foregoing, it is apparent that there is no genuine issue for trial with regard to Plaintiff's due process claim.
///

ORDER - 16

Defendants' motion for summary judgment with respect to Plaintiff's due process claim against Defendants is therefore granted.

D.    Section 1985 Claim

Plaintiff makes a cursory claim that he is entitled to relief pursuant to 42 U.S.C. § 1985.  (Ct. Rec. 9, pp. 3 & 9).

Section 1985 proscribes conspiracies to interfere with an individual's civil rights.  To state a cause of action under section 1985, Plaintiff must allege: (1) a conspiracy, (2) to deprive any person or class of persons of the equal protection of the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or deprivation of any right or privilege of a citizen of the United States.  *Gillispie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980); *Giffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971).

The Ninth Circuit has held that a claim under § 1985 must allege specific facts to support the allegation that defendants conspired together.  *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988).  A mere allegation of conspiracy without factual specificity is insufficient to state a claim under 42 U.S.C. § 1985. *Id.*; *Sanchez v. City of Santa Anna*, 936 F.2d 1027, 1039 (9th Cir. 1991).

Plaintiff has failed to plead with particularity with respect to his Section 1985 claim and additionally fails to offer a response to Defendants' motion for summary judgment on Plaintiff's Section 1985

ORDER - 17

claim.  Accordingly, Defendants' motion for summary judgment with respect to Plaintiff's Section 1985 claim against Defendants is granted.  There is no genuine issue for trial with regard to Plaintiff's Section 1985 claim.

     E.   <u>State Law Claims</u>

     Plaintiff alleges that Defendants violated his rights under not only the United States Constitution, but also the Washington State Constitution.  (Ct. Rec. 33).  A court is not, however, required to undertake an independent state constitutional analysis without the plaintiff first raising a convincing argument.  *State v. Gunwall*, 106 Wn.2d 54, 63 (1986).  "Recourse to our state constitution as an independent source for recognizing and protecting the individual rights of our citizens must spring not from pure intuition, but from a process that is at once articulable, reasonable, and reasoned."  *Id.*  "If a party does not provide constitutional analysis based upon the facts set out in *Gunwall*, the court will not analyze the state constitutional grounds in a case."  *First Covenant Church of Seattle v. City of Seattle*, 120 Wn.2d 203, 224 (1992).

     The six nonexclusive criteria established in *Gunwall* to determine whether the Washington State Constitution should be considered as extending broader rights to its citizens than does the United States Constitution are as follows: 1) the textual language of the state constitution; 2) significant differences in the texts of parallel ///

ORDER - 18

provisions of the federal and state constitutions; 3) state constitutional and common law history; 4) preexisting state law; 5) differences in structure between federal and state constitutions; and 6) matters of particular state interest and local concern. *Gunwall*, 106 Wn.2d at 59-61.

Plaintiff has failed to consider or brief the *Gunwall* factors. In addition, Plaintiff has failed to plead with particularity his state constitutional claims. Plaintiff also offers no response to Defendants' motion for summary judgment on Plaintiff's state law claims. Based on the foregoing, the Court grants Defendants' summary judgment motion on Plaintiff's state law claim.

F.    New Claim

A review of Plaintiff's complaint reveals no assertion of retaliation. (Ct. Rec. 9). However, Plaintiff's opposition to Defendants' motion for summary judgment raises, for the first time, a claim that he was retaliated against by Defendants. (Ct. Rec. 50, pp. 6-7); (Ct. Rec. 52, pp. 4-5). It is not appropriate for Plaintiff to raise a new claim in an opposition to Defendants' motion for summary judgment. The retaliation assertion will not be considered by the Court.

Due to the conclusions determined above, it is not necessary for the Court to address Defendants' arguments that they are entitled to qualified immunity from the suit. (Ct. Rec. 38).

///

ORDER - 19

IV.  <u>Conclusion</u>

For the reasons discussed above, this Court **GRANTS** Defendants' motion for summary judgment.  (**Ct. Rec. 38**).  Plaintiff's complaint (Ct. Rec. 9) is hereby dismissed with prejudice.

**It IS SO ORDERED.** The District Court Executive is directed to enter judgment in favor of Defendants Chana White, Peggy Palomarez and Kathleen Dowdy and against Plaintiff Chornor Brown, file this Order, provide a copy to counsel for Plaintiff and Defendants, and **CLOSE** this file.

**DATED** this     4th     day of May, 2007.


                              s/Michael W. Leavitt
                         MICHAEL W. LEAVITT
                    UNITED STATES MAGISTRATE JUDGE

ORDER - 20